RECEIVED
USDC. CLERK. CHARLESTON. SC

2010 JUN 11 �ₚ 2: 24

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Frederick Knowles # 266647,       )      C.A. No. 2:09-1921-MBS-RSC
                                  )
              Plaintiff,          )
                                  )
       -versus-                   )      **REPORT AND RECOMMENDATION**
                                  )
SCDC; Doctor; Ms. Debbie          )
Morton; Ms. Ruth Mitchell,        )
et al.,                           )
                                  )
              Defendants.         )

This civil rights action, brought by a state prisoner

proceeding pro se and in forma pauperis pursuant to 42 U.S.C.

§ 1983[1], is before the undersigned United States Magistrate Judge

for a report and recommendation on the defendants' motion for

summary judgement. 28 U.S.C. § 636 (b).

The plaintiff, Frederick Knowles, brought this action on

July 21, 2009, and named as defendants SCDC, "Doctor _____"; Ms.

---

[1]    Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory or the
District of Columbia, subjects, or causes to be subjected, any
citizen of Section 1983, titled a civil action for deprivation of
rights reads in relevant portion: the United States or other
person within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution and
laws, shall be liable to the party injured in an action at law,
suit in equity, or other proper proceeding for redress, except
that in any action brought against a judicial officer for an act
or omission taken in such officer's judicial capacity, injunctive
relief shall not be granted unless a declaratory decree was
violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

1

Debbie Morton; Ms. Ruth Mitchell, and an unidentified "et al."
He alleged improper medical care constituting cruel and unusual
punishment in violation of the eighth amendment and seeks
damages.

On September 3, 2009, the Honorable Margaret B. Seymour,
United States District Judge, dismissed SCDC from the action.
Defendants Morton and Mitchell answered on October 6, 2009,
indicating that Defendant "Doctor" had never been identified or
served a copy of the summons and complaint, that the plaintiff
had failed to exhaust available administrative remedies, and
raising other defenses.

On February 16, 2010, the defendants filed a motion for
summary judgment along with the plaintiff's medical records and
various affidavits, and on February 17, 2010, the plaintiff was
given an explanation of dismissal and summary judgment procedure
as well as pertinent extracts from Rules 12 and 56 of the Federal
Rules of Civil Procedure similar to that required by Roseboro v.
Garrison, 528 F.2d 309 (4th Cir. 1975). The plaintiff did not
respond so the undersigned entered an order that the plaintiff
respond to the motion within ten (10) days or risk having the
action dismissed for failure to prosecute the case. On April 8,
2010, the plaintiff filed an unverified opposition, and on April
19, 2010, the defendants filed a reply to the opposition. On May
10, 2010, the defendants filed an amended motion for summary

judgment in which they abandoned their affirmative defense of failure to exhaust administrative remedies and reasserted verbatim their other grounds for summary judgment without raising any new grounds for judgment. Hence it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56(c), a district court must enter judgment against a party who, "after adequate time for discovery ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law," entry of summary judgment is mandated. Fed.R.Civ.P. 56(c). To avoid summary judgment on a defendant's motion, a plaintiff must produce evidence creating a genuine issue of material fact. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986). In determining whether a genuine issue of material fact is in dispute, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are

3

to be drawn in his favor." <u>Anderson</u>, at 255, 106 S.Ct. at 2513-14.

## LAW RELATED TO MEDICAL CARE AFFORDED PRISONERS

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one who has committed a crime. <u>See</u>, U.S. Const. Amend. VIII. Accordingly, a prisoner makes out a claim under the Eighth Amendment if he can establish that the prison medical personnel responsible for his care were deliberately indifferent to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976); <u>Amos v. Maryland Dep't of Pub. Safety & Correctional Servs.</u>, 126 F.3d 589, 610 (4th Cir. 1997), vacated in part on other grounds, 118 S.Ct. 2339 (1998). These requirements go beyond even a showing of negligence, and requires Plaintiff to establish the defendants acted with an indifference as would "offend evolving standards of decency." <u>Id.</u>

In a § 1983 claim, whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry. First, the prisoner must show that he was deprived of an objectively serious human need. <u>Johnson v. Quinones</u>, 145 F.3d 164 (4th Cir. 1998). Second, the plaintiff must demonstrate that the prison official acted with a "sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991).

4

Farmer v. Brennan, 511 U.S. 825 (1994) and cases interpreting Farmer, make clear that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific serious risk of harm confronting the inmate. See, Farmer, 511 U.S. at 837, 114 S.Ct. at 1978-79 (stating that "the official must both be aware that a substantial risk of serious harm exists, and he must also draw the inference").

Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Prison officials must know of and disregard an objectively serious condition, medical need, or risk of harm. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844, 114 S.Ct. at 1982; see, Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

In Estelle v. Gamble, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken. The Supreme Court

5

pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Id. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988); Cf. Whitley v. Albers, 475 U.S. 312, 320 (1986)(a state's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities).

Likewise, constitutionally, state prisons are not required to furnish prisoners the best of care, only reasonable care. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). Similarly, the constitution does not guarantee a prisoner the treatment of his choice. Jackson v. Fair, 846 F.2d 811 (1st Cir. 1988). The mere failure to treat all medical problems to a prisoner's satisfaction, even if actual medical malpractice is involved, is insufficient to support a claim under § 1983. Sosabee v. Murphy, 797 F.2d 179 (4th Cir. 1986). Even if Plaintiff could establish negligence in his medical treatment, his cause of action would be in negligence against the defendants. Section 1983 does not provide for a remedy for violation of state law, but only for violations which rise to the level of unconstitutional deprivation. "Medical malpractice does not become a

6

constitutional violation merely because the victim is a
prisoner." Estelle, supra. Negligence simply is not actionable
under 42 U.S.C. § 1983. Daniels v. Williams, 474 U.S. 327 (1986).

## FACTS

The facts either undisputed or according to the plaintiff's
evidence taken in the light most favorable to the plaintiff as
the non-moving party and all reasonable inferences therefrom are
as follow.

By affidavit, Plaintiff Knowles indicated that on June 5,
2008, he signed up for sick call and complained that he had lost
37 pound in 2 weeks, that he experienced a sudden loss of
appetite, that he had a continual thirst, and that he was feeling
light headed and was having bouts of "drunken stupor." He also
complained of losing his eyesight. He complained to defendant
nurses Morton and Mitchell. He was examined by a doctor who did
not check his blood pressure, heart rate, or temperature. The
nurses and the doctor believed that these complaints were caused
by his preexisting Hepatitis C[2] and he was sent back to his
housing unit in pain.

Knowles returned to the medical unit the next day and the
nurses again told him that his symptoms were caused by Hepatitis

---

[2] Knowles averred that his symptoms are not symptoms which
are caused by hepatitis. However, he does not have a medical
degree and he does not indicate how this would be within his
personal knowledge. Therefore, his statement is not taken as a
fact for summary judgment purposes. Fed.R.Civ.P.56(c).

C and that they "wanted to hear no more of the matter." They also said, "You are dying, go ahead and die." Three days later, Knowles became unconscious and was taken to the hospital where his blood sugar level measured 853 and he was diagnosed for the first time as being diabetic.

The record also contains affidavits from Dr. Richard Bearden, Nurse Martin, and Nurse Mitchell. Martin is a registered nurse and Mitchell is a licensed practical nurse at Livesay, where Knowles was housed at the time relevant to his complaint. Their duties as nurses at SCDC include examining, treating, and providing medications for inmates. Dr. Bearden affied that he is a licensed general practitioner and has been practicing medicine for over 36 years. His duties as a physician with SCDC include diagnosing, treating, and providing medications for inmates. (Aff. Bearden, Mitchell, Martin).

Mitchell stated in her affidavit that she saw Knowles once and has also reviewed his medical records. She stated based on her review of the medical records, Knowles was transferred to Livesay on or about June 2, 2008. She saw him on June 5, 2008, at which time he complained that he felt "awful", had no energy, and had heartburn along with other complaints. She noted that his medical records also showed that he had lost approximately 30 pounds since April of 2008. She saw from the Plaintiff's medical records that prior to his transfer to Livesay he had been

diagnosed with Hepatitis C and was scheduled for a liver biopsy on June 13, 2008. Based on these facts, she felt at that time that the Plaintiff's complaints were related to his Hepatitis C. She stated that though she felt that his complaints were related to his Hepatitis C and was aware that he was scheduled for a liver biopsy, she scheduled him to be seen by the doctor for further evaluation. In addition, she gave him a no work pass for six days, prescribed Zantac for his heartburn, and instructed him to increase his fluid intake. She affied that based on her review of his medical records, he had no prior history of or prior diagnosis of diabetes. (Aff. Mitchell, Dash-Frazier).

Mitchell stated she had no further interaction with Knowles after she saw him on June 5, 2008. She was not made aware of any additional complaints after June 5, 2008, but was informed when she returned to work on Monday, June 9, 2008, that Knowles had been transported to the hospital. Mitchell stated she works from 6 a.m. until 2 p.m. Monday through Friday and did not work on Saturday, June 7th, or Sunday, June 8th. Mitchell stated that at all times in her dealings with the plaintiff, she acted in accordance with generally accepted medical practices and at no time did she intentionally take any action to deny him proper medical care. (Aff. Mitchell).

Defendant Martin's affidavit states that she did not see Knowles, but has reviewed his medical records which indicated

9

that he was transferred to Livesay on or about June 2, 2008, and was seen by Mitchell on June 5, 2008, at which time he complained that he felt "awful", had no energy, and had heartburn along with other complaints. Martin receive a telephone call about Knowles on June 6, 2008, at approximately 9:45 a.m. in which she was informed that he complained he was in pain "all over", had bad heartburn, no energy, weight loss, and dry mouth. She then reviewed the plaintiff's medical record and determined that he had been seen by Nurse Mitchell the previous day with essentially identical complaints. She also noted that prior to his arrival at Livesay, he had been diagnosed with Hepatitis C and had been scheduled for a liver biopsy on June 13, 2008. She saw that Nurse Mitchell had given him a no work pass for six days, prescribed Zantac for his heartburn, instructed him to increase his fluid intake, and had scheduled him to see the doctor at the next available time.

Martin affied that she felt at that time that the plaintiff's complaints were related to his Hepatitis C and because he was already scheduled for a liver biopsy, already scheduled to see the doctor at the next available time, and as Mitchell had given him a no work pass and prescribed Zantac, she determined that he did not need to be seen at that time. Nonetheless, because of his complaints of pain she did prescribe the pain medication Percogesic to be given four times a day as

needed for pain. She stated that based on her review of Knowles'
medical records, he had no prior history or prior diagnosis of
diabetes. (Aff. Martin, Dash-Frazier).

Martin had no further interaction with Knowles after June 6,
2008, and was not made aware of any additional complaints by the
plaintiff after June 6, 2008, but was informed when she returned
to work on Monday, June 9th, that he had been transported to the
hospital.

She also stated Livesay does not have 24-hour medical
coverage, but instead medical personnel work from 6 a.m. until 2
p.m. Monday through Friday. She did not work on Saturday, June
7th, or Sunday, June 8th. Martin stated that at all times in her
dealings with the plaintiff, she acted in accordance with
generally accepted medical practices and at no time intentionally
took any action to deny him proper medical care. (Aff. Martin).

The affidavit of Dr. Bearden stated he does not recall the
plaintiff and based on his review of the plaintiff's medical
records, did not see the plaintiff when he was incarcerated at
Livesay. Dr. Bearden's affidavit is entirely consistent with the
nurses' affidavits. Dr. Bearden stated that based on his review
of the plaintiff's records, the plaintiff's complaints to Nurse
Mitchell on June 5th would be consistent with diabetes, but would
also be consistent with Hepatitis C because Hepatitis C can cause
fatigue, weight loss, lack of energy, and stomach discomfort or

heartburn.  Hepatitis C can also cause a person to simply feel "awful" as the plaintiff complained.  He stated that it was reasonable for Nurse Mitchell to conclude that these complaints were related to Plaintiff's Hepatitis C as opposed to diabetes as he had no history or prior diagnosis of diabetes. (Aff. Bearden, Dash-Frazier).

Dr. Bearden stated that Nurse Martin received a call on June 6, 2008, at approximately 9:45 a.m. reporting that the plaintiff was complaining of essentially the same symptoms he complained about during his June 5th appointment with Nurse Mitchell.  He stated Nurse Martin noted that the Plaintiff was scheduled for a liver biopsy on June 13th and ordered that the plaintiff be provided Percogesic, a pain medication, four times a day as needed for pain.  Dr. Bearden stated that in his opinion, it was reasonable for Nurse Martin to conclude that Plaintiff's complaints were related to Hepatitis C based on the nature of his complaints and the Plaintiff's medical history. (Aff. Bearden, Dash-Frazier).

Dr. Bearden stated that based on the plaintiff's medical records, the plaintiff again complained to correctional officers on Saturday, June 7th.  He confirmed that Livesay is not a 24 hour medical facility and there are only medical personnel at the Institution Monday through Friday from 6 a.m. until 2 p.m.  As there were no medical personnel at the institution on June 7th,

correctional staff correctly contacted the Kirkland Correctional Institution Infirmary about the plaintiff's condition at approximately 8 p.m. on Saturday, June 7th, and were instructed to maintain the plaintiff on clear liquids and to continue with bed rest for the remainder of the night. Correctional officers contacted Kirkland Infirmary again that night at approximately 11 p.m. and were instructed to transfer the plaintiff to the Kirkland Infirmary, however before the plaintiff could be transferred, he was found unconscious in the bathroom and correctional officers contacted 911 to transport the plaintiff to the hospital emergency room. According to the plaintiff's medical records, he was transferred to Spartanburg Regional Medical Center and was admitted on the morning of June 8th. Dr. Bearden stated that hospital records revealed that the plaintiff's blood sugar was extremely elevated and he was diagnosed as a new onset diabetic.

The plaintiff did not return to Livesay after being discharged from the hospital, but was instead transferred to the McCormick Correctional Institution because, due to the plaintiff's diabetes, he must be held in an institution with 24-hour medical care, which is not available at Livesay. (Aff. Bearden, Dash-Frazier).

Dr. Bearden stated based on his review of the plaintiff's medical records, it was reasonable for Nurse Mitchell to conclude

that the Plaintiff's complaints on June 5th were related to his Hepatitis C as opposed to diabetes as he had no history or prior diagnosis of diabetes.

Dr. Bearden stated that in his opinion, the plaintiff suffered no long-term negative effects as result of his condition on June 7th and June 8th and is currently receiving medical care for his medical conditions. He further stated that in his opinion, the plaintiff was provided proper medical care for his medical conditions while at Livesay. (Aff. Bearden).

## DISCUSSION

A review of the record and relevant case law reveals the defendants' motion should be granted.

This action is, at most, arguably a case of negligence rather than a violation of constitutionally protected rights actionable in a civil rights case under 42 U.S.C. § 1983. Incorrect medical treatment, such as an incorrect diagnosis, as here, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See, Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels v. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action

14

under § 1983 for negligent conduct.").

Further, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); see also, Brooks v. Celeste, F.3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendants' actions somehow constituted medical negligence or medical malpractice, the defendants are entitled to summary judgment.

Here, the only evidence is that based upon Plaintiff's prior diagnosis of Hepatitis C, his upcoming liver biopsy, and his

symptoms consistent with his Hepatitis C, it was reasonable for the defendant nurses to conclude that his preexisting Hepatitis C was causing his symptoms rather than diabetes for which he had no history. See, Aff. Dr. Bearden. Further it is also undisputed that Plaintiff was treated by the nurses, which treatment included giving him Percogesic for pain four times a day, and Zantac for his heartburn. Additionally he was instructed to increase his fluid intake, and he was scheduled to see the doctor at the next available time.

Plaintiff has not shown that the defendants were deliberately indifferent to his serious medical needs. Wilson v. Seiter, supra. He has demonstrated his disagreement as to the proper treatment for his symptoms but that does not in and of itself state a constitutional violation. See, Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F.Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). On this record, the defendants are entitled to summary judgment.

### CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motion for summary judgment be granted, that the unnamed defendants "Doctor _____" and "et

al." be dismissed for failure of service, and that the action be ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

June 11, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within **fourteen (14) days** of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).